Andrew L. Packard (State Bar No. 168890)
Email: andrew@packardlawoffices.com
LAW OFFICES OF ANDREW L. PACKARD
245 Kentucky Street, Suite B3
Petaluma, CA 94952
Phone: (707) 782-4060

Erina Kwon (State Bar No. 235079)
Email: erina@lawaterkeeper.org
Benjamin A. Harris (State Bar No. 313193)
Email: ben@lawaterkeeper.org
LOS ANGELES WATERKEEPER
360 E 2nd Street Suite 250
Los Angeles, CA 90012
Phone: (310) 394-6162

*Attorneys for Plaintiff*
LOS ANGELES WATERKEEPER

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOS ANGELES WATERKEEPER, a California non-profit association, | Case No.: 2:24-cv-10541-MAR |
| Plaintiff, | [PROPOSED] CONSENT DECREE |
| v. | |
| ANVIL STEEL CORPORATION, a California corporation; JUNIOR STEEL CO., a California corporation, and PAUL GERARD SCHIFINO, a California resident, | |
| Defendants. | |

### CONSENT DECREE

**WHEREAS,** Plaintiff Los Angeles Waterkeeper ("LA Waterkeeper" or "Plaintiff") is a 501(c)(3) non-profit public benefit corporation organized under the laws of the State of California, with its main office in Los Angeles, California;

**WHEREAS,** LA Waterkeeper is dedicated to the preservation, protection and defense of the surface, ground, coastal and ocean waters of Los Angeles County from all sources of pollution and degradation;

**WHEREAS**, the parties have stipulated to dismiss Paul Gerard Schifino from the above-captioned action upon the completion of agency review;

**WHEREAS**, Defendants Anvil Steel Corporation ("Anvil Steel") and Junior Steel Co. ("Junior Steel"), collectively ("Defendants") own and/or operate facilities located at 350 West 168th Street, 134 West 168th Street, 137 West 168th Street, and 16630 S Main Street in Gardena, California 90248 (each a "Facility" and collectively, the "Facilities");

**WHEREAS**, the 350 West 168th Street Facility, operates under the Waste Discharge Identification ("WDID") Number 4 19I027651, and shall hereinafter individually also be referred to as the "Permitted Facility";

**WHEREAS**, the 134 West 168th Street Facility, 137 West 168th Street Facility, and the 16630 S Main Street Facility, have not yet enrolled under the General Permit (as defined below) and do not have WDID Numbers, and shall collectively hereinafter also be referred to as the "Unpermitted Facilities";[1]

**WHEREAS**, the Facilities' industrial activities relate to the fabrication of structural steel beams. The Permitted Facility is categorized under Standard Industrial Classification ("SIC") Code 3441, covering fabricated structural metal. Once enrolled under the General Permit, each of the Unpermitted Facilities will also be categorized under, at least, SIC Code 3441;

---

[1] As discussed in Paragraph 31-32 below, the Unpermitted Facilities shall enroll in the General Permit pursuant to this Consent Decree.

**WHEREAS**, storm water discharges associated with industrial activity at the Facilities are regulated by the National Pollutant Discharge Elimination System ("NPDES") General Permit No. CAS000001 [State Water Resources Control Board], Water Quality Order 2014-0057-DWQ, as amended by Order Nos. 2015-0122-DWQ and 2018-0028-DWQ incorporating: 1) Federal Sufficiently Sensitive Test Method Ruling; 2) Total Maximum Daily Load Implementation Requirements; and 3) Statewide Compliance Options Incentivizing On-Site or Regional Storm Water Capture and Use, at the Facility ("General Permit" or "Permit"),[2] and the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251, *et seq.* ("Clean Water Act" or "CWA"), Sections 301(a) and 402, 33 U.S.C. §§ 1311(a), 1342;

**WHEREAS**, Defendants' operations at the Facilities result in discharges of pollutants into waters of the United States and are regulated by the Clean Water Act Sections 301(a) and 402. 33 U.S.C. §§ 1311(a), 1342;

**WHEREAS**, the General Permit requires all permittees, including Defendants, to comply with, *inter alia*, the following mandates: (1) develop and implement a storm water pollution prevention plan and a storm water monitoring implementation plan, (2) control pollutant discharges using, as applicable, best available technology economically achievable or best conventional pollutant control technology to prevent or reduce pollutants through the development and application of Best Management Practices, which must be included and timely updated in the SWPPP, (3) reduce and eliminate discharges necessary to comply with any and all applicable Water Quality Standards, and (4) implement a monitoring and reporting program designed to assess compliance with the Permit;

---

[2] Any reference to the "General Permit" or "Permit" shall be to the then-effective version, regardless of whether such changes are the result of amendments, revisions, reissuance, or similar modification of material terms. Any reference in this Consent Decree to specific sections or subsections of the General Permit that are moved, modified, or otherwise changed in a subsequent version of the General Permit shall be to such subsequent reference(s) as if set forth herein, *e.g.*, the current §XI.B.6.c may be renumbered as §XI.B.7.c, combined into the current §XI.B.6.d, or split into a new §XI.B.6.c and §XI.B.6.d.

**WHEREAS**, on September 28, 2024, Plaintiff issued a notice of intent to file suit ("60-Day Notice") to Defendants, the Administrator of the United States Environmental Protection Agency ("EPA"), the Executive Director of the State Water Resources Control Board ("State Board"), the Executive Officer of the Los Angeles Regional Water Quality Control Board ("Regional Board"), the Regional Administrator of EPA Region IX, and the U.S. Attorney General of the U.S. Department of Justice, alleging violations of the Clean Water Act and the General Permit, at the Facilities;

**WHEREAS**, on December 6, 2024, LA Waterkeeper filed a complaint against Defendants in the Central District of California ("Court"), Civil Case No. 2:24-cv-10541-MAR ("Complaint");

**WHEREAS**, Plaintiff's Complaint alleged violations of the General Permit and the Clean Water Act for Defendants' discharges of pollutants into storm drains and surface waters, including the Dominguez Channel Estuary (collectively, "Receiving Waters");

**WHEREAS**, Plaintiff and Defendants (collectively "Settling Parties" or "Parties") agree that it is in their mutual interest to enter into a Consent Decree setting forth terms and conditions appropriate to resolving the allegations set forth in the 60-Day Notice and Complaint without further proceedings;

**WHEREAS**, all actions taken by Defendants pursuant to this Consent Decree shall be made in compliance with all applicable federal, state and local laws, rules and regulations.

**NOW, THEREFORE, IT IS HEREBY STIPULATED BETWEEN THE SETTLING PARTIES AND ORDERED AND DECREED BY THE COURT AS FOLLOWS:**

1.    The Court has jurisdiction over the subject matter of this action pursuant to Section 505(a)(1)(A) of the CWA, <u>33 U.S.C. § 1365(a)(1)(A)</u>.

2.      Venue is appropriate in the Central District Court pursuant to Section 505(c)(1) of the CWA, 33 U.S.C. § 1365(c)(1), because the Facilities at which the alleged violations are taking place are all located within this District.

3.      The Complaint states a claim upon which relief may be granted against Defendants pursuant to Section 505 of the CWA, 33 U.S.C. § 1365.

4.      LA Waterkeeper has standing to bring this action.

5.      The Court shall retain jurisdiction over this matter for the purposes of interpreting, modifying, or enforcing the terms and conditions of this Consent Decree and adjudicating all disputes among the Parties that may arise under the provisions of this Consent Decree, for the Term (as defined below) of this Consent Decree including for as long as necessary for the Court to resolve any motion to enforce this Consent Decree, but only regarding issues raised within the Term. The Court shall have the power to enforce this Consent Decree with all available legal and equitable remedies, including contempt.

## I.      OBJECTIVES

6.      It is the express purpose of the Settling Parties through this Consent Decree to further the objectives of the Clean Water Act, and to resolve all issues alleged by LA Waterkeeper in its 60-Day Notice Letter and Complaint. These objectives include compliance with the provisions of this Consent Decree, compliance with all terms and conditions of the General Permit, and compliance with all applicable sections of the CWA.

7.      In light of these objectives and as set forth fully below, Defendants agree to comply with the provisions of this Consent Decree, terms and conditions of the General Permit, and all applicable sections of the CWA at the Facilities.

## II.      AGENCY REVIEW AND DEFINITIONS

### A.      AGENCY REVIEW OF CONSENT DECREE

8.      Agency Review. Plaintiff shall submit this Consent Decree to the United States Department of Justice and the United States EPA (the "Federal Agencies") for

agency review consistent with <u>40 C.F.R. § 135.5</u>. The agency review period expires forty-five (45) calendar days after receipt by the Federal Agencies, as evidenced by certified return receipts, or upon the date that the Federal Agencies provide a no objection letter, whichever is earlier ("Agency Review Period"). In the event that the Federal Agencies object to entry of this Consent Decree or to any portion of this Consent Decree, the Parties agree to meet and confer to attempt to resolve the issue(s) raised by the Federal Agencies. If the Parties are unable to resolve any issue(s) raised by the Federal Agencies in their comments, the Parties agree to expeditiously seek a settlement conference with the assigned Magistrate Judge to resolve any issue(s).

9. <u>Court Notice</u>. Plaintiff shall notify the Court of the receipt date by the Federal Agencies, as required by <u>40 C.F.R. § 135.5</u>, in order to coordinate the Court's calendar with the 45-day review period.

10. <u>Entry of Consent Decree</u>. Following the expiration of the Agency Review Period, Plaintiff shall submit the Consent Decree to the Court for entry.

**B.   DEFINITIONS**

11. Unless otherwise expressly defined herein, terms used in this Consent Decree which are defined in the CWA or in regulations or rules promulgated under the CWA have the meaning assigned to them in the statutes or regulations or rules. Whenever terms listed below are used in this Consent Decree, whether or not capitalized, the following definitions apply:

a. "BAT" means the Best Available Technology Economically Achievable.

b. "BCT" means the Best Conventional Pollutant Control Technology, and collectively with BAT is referred to herein as "BAT/BCT."

c. "BMPs" means Best Management Practices as defined in Attachment C (Glossary) of the General Permit.

d.   "Consent Decree" means this Consent Decree and any attachments or documents incorporated by reference.

e.   "Day" means a calendar day. In computing any period of time under this Consent Decree, where the last day of such period is a Saturday, Sunday, or Federal or State Holiday, the period runs until the close of business on the next day that is not a Saturday, Sunday, or Federal or State Holiday.

f.   "Design Storm" means the volume and flow rate of runoff produced from a design storm as defined in General Permit Section X.H.6, or as otherwise described herein and established in and by the respective Hydrologic Evaluations prepared for the applicable Facility.

g.   "Discharge Point" means each discharge location designated in the then-current SWPPPs for the Facilities.

h.   "Effective Date" means the effective date of this Consent Decree, which shall be the date of full execution by the Parties.

i.   "Entry Date" means the day this Consent Decree is approved and entered by the Court.

j.   "Forecasted Rain Event" means a forecasted rain event with a fifty percent (50%) or greater probability of precipitation above 0.1 inches at least twenty four (24) hours prior to the rain event as determined by the National Oceanic and Atmospheric Administration (http://forecast.weather.gov/) for "90248, West Rancho Dominguez, CA, USA."[3]

k.   "MIP" means a Monitoring Implementation Plan.

l.   "PPT" means Pollution Prevention Team.

---

[3] Available at https://forecast.weather.gov/MapClick.php?lat=33.8935&lon=-118.274.

m.  "Qualified Industrial Storm Water Practitioner" or "QISP" shall have the definition set forth in Section IX.A.1 of the General Permit.

n.  "Qualifying Storm Event" or "QSE" shall have the definition set forth in Section XI.B.1 of the General Permit.

o.  "Reporting Year" means the period from July 1 of a given calendar year to June 30 of the following calendar year.

p.  "SMARTS" means the California State Water Resources Control Board's Stormwater Multiple Application and Report Tracking System.

q.  "SWPPP" means a Storm Water Pollution Prevention Plan.

r.  "Term" means the period between the Effective Date and the "Termination Date."

s.  "Termination Date" means the latest of:

    i.  June 30 following five (5) years from the Effective Date;

    ii.  June 30 following two (2) years after an advanced treatment system is fully installed, operational, and optimized at the 137 W. 168th Street Facility, if ever;

    iii.  seven (7) days from the conclusion of any proceeding or process to enforce the Consent Decree initiated prior to the dates in Paragraph 11.s.i. and 11.s.ii. above; or

    iv.  seven (7) days from Defendants' completion of all payments and other affirmative duties required by this Consent Decree.

    v.  However, if any of the Facilities (1) cease industrial operations at that Facility; (2) eliminate all sources of industrial stormwater pollution at that Facility; (3) file a Notice of Termination ("NOT") under the General Permit;

7

and (4) receive approval by the Regional Board of the NOT, then Defendants' affirmative obligations hereunder with respect to that Facility, except for any payment and data retention obligations, shall cease five (5) days after Defendants provide written notification to LA Waterkeeper of the such Regional Board approval.

vi.    Additionally, if June 30 following two (2) years after an advanced treatment system is fully installed, operational, and optimized at the 137 W. 168th Street Facility, if ever, is later than June 30 following five (5) years from the Effective Date, then as to the then-remaining Facilities, Defendants' affirmative obligations hereunder with respect to the then-remaining Facilities, except for any payment and data retention obligations, shall cease on June 30 following five (5) years from the Effective Date.

t.    "Wet Season" means the period beginning October 1st of any given calendar year and ending May 31st of the following calendar year.

## III.    COMMITMENTS OF THE SETTLING PARTIES

### A.    STORM WATER POLLUTION CONTROL BEST MANAGEMENT PRACTICES

12.    <u>Non-Storm Water Discharge Prohibition</u>. Any unauthorized non-storm water discharge (as defined in the General Permit), shall be a violation of this Consent Decree unless identified and corrected pursuant to the Action Plan requirements described in Paragraph 26 below.

13.    <u>Current and Additional Best Management Practices</u>.  Defendants shall implement BMPs identified in their SWPPPs and BMPs described herein, and shall develop and implement additional BMPs as necessary to comply with the provisions of this Consent Decree and the General Permit, including but not limited to those

necessary to comply with (1) BAT/BCT; and (2) the General Permit's Receiving Water Limitations, which require that discharges from the Facilities "not cause or contribute to an exceedance of any applicable water quality standards" contained in a Statewide Water Quality Control Plan or the applicable Regional Board's Basin Plan.

14.    Rain Gauge/Sensor. Defendants shall install and maintain an electronic rain gauge or sensor at one of the Facilities within thirty (30) days of the Effective Date. The rain gauge/sensor shall be capable of measuring precipitation down to at least 0.1 inches, and record start/stop times and hourly, non-cumulative precipitation for each rain event. During the Term, Defendants shall collect data using the gauge/sensor for all precipitation events to the nearest 0.1 inch, including start/stop times. Data from the rain gauge/sensor shall be conclusive of precipitation quantities and timing for purposes of this Consent Decree, except in the event of equipment malfunctions caused by anything outside of Defendants' control.

15.    Structural and Non-Structural BMPs for the 350 West 168th Street Facility.

       a.    As soon as possible but no later than sixty (60) days of the Effective Date, Defendants shall develop and implement the following non-structural BMPs at the 350 West 168th Street Facility:

          i.    Patch, pave, or otherwise resurface areas of significantly degraded pavement or asphalt throughout the 350 West 168th Street Facility as necessary;

          ii.    Implement a sweeping program using a regenerative air or vacuum sweeper certified by the South Coast Air Quality Management District under Rule 1186 or with greater than 98 percent efficiency on 0.3 to 1.0 micron particles on all paved areas within the Facility, and outside the Facility where pollutants are tracked out from within the Facility, at

9

least once per month.  Employ vacuum sweeping with a backpack-style HEPA vacuum in conjunction  with the mechanical sweeper in areas within the Facility that a mechanical sweeper cannot access, at least once per month outside the wet season, once per week during the wet season, and within twenty-four (24) hours prior to a forecasted rain event;

iii.  Employ and secure new wattles/filter media/filtration socks (biochar or other equivalent media), which have been bench-scale tested at similar sites to optimize selection, in order to remove sediments, metals, and organic materials in storm water discharged from the 350 West 168th Street Facility, and in addition to existing onsite treatment system, configure such wattles/filter media/socks to achieve optimal contact time with storm water prior to discharge, *i.e.,* in multiple layers and/or overlapping formations. Defendants shall, thereafter, employ and secure new such wattles/filter media/filtration in the same manner annually, no later than September 15th;

iv.  During the Wet Season, and as necessary, replace the wattles/filter media/socks when degraded or ineffective, including without limitation when there are rips, tears or other visual damage, and/or sampling data demonstrating the wattles/filter media/socks are not sufficiently reducing pollutant concentrations;

v.  Annually no later than September 15th, and as necessary during the Wet Season, clean all trench drains at the Facility

[PROPOSED] CONSENT DECREE

entrances to ensure that they are clear of debris, unclogged, and in proper working condition;

vi. Institute a formal pre-rain protocol throughout the Wet Season to be implemented within twenty-four (24) hours prior to a Forecasted Rain Event, involving inspection of any wattles/filter media/socks deployed at the Facility, inspection of all trench drains, and removal of any exposed waste material to the maximum extent practicable;

vii. Within twenty-four (24) hours prior to a Forecasted Rain Event, to the extent feasible, cover all industrial waste, debris and scrap bins, and trash cans with tarps, lids, or other coverings sufficient to prevent exposure to rainfall, including without limitation those stored outside and where roof protection is inadequate, or otherwise move them into a covered structure adequate to prevent exposure to rainfall;

viii. Remove, and prevent the storage of, any inutile, and/or abandoned racks, vehicles, equipment, paint and waste materials from the entire 350 West 168th Street Facility; and

ix. Institute an equipment and vehicle maintenance program that ensures:

1. no maintenance activities occur outdoors during wet weather, unless such maintenance is required for safe operation of the 350 West 168th Street Facility, *e.g.*, the forklift breaks down in a location that prevents ingress/egress;

2. maintenance activities occur only in designated work areas or beneath covered maintenance areas; and

11

3.      when maintenance activities must be performed outdoors, action shall be taken to immediately contain, capture, and clean up any discharge or spills of waste fluids to the ground.

x.      Within seven (7) days of each of the BMPs in Paragraphs 15.a.i. and 15.a.ii. above being implemented, Defendants shall confirm to LA Waterkeeper in writing, with photographs, that such BMP has been implemented for the first time as set forth above.

b.  Hydrological Evaluation/Treatment Plan.

i.      As soon as possible but no later than ninety (90) days after the Effective Date, Defendants shall submit a written plan ("Hydrological Evaluation/Treatment Plan") to LA Waterkeeper providing a full assessment of the 350 West 168th Street Facility's topography, drainage, storm water flow (including surface/sheet flow), and retention capacity and establishing the volume- and flow-based criteria for the Design Storm to be used for the 350 West 168th Street Facility for the purposes of this Consent Decree as well as providing for the design and upgrading of the Facility's advanced treatment system sufficient to contain and treat storm water and prevent the discharge of untreated storm water from the 350 West 168th Street Facility up to the Design Storm standard, including schedule for full implementation. Defendants shall endeavor to utilize a Design Storm of greater than the 85th percentile storm event for the 350 West 168th Street Facility if feasible.

  ii. LA Waterkeeper shall provide Defendants with a written response ("Recommendations") if any, to the Hydrological Evaluation/Treatment Plan within twenty-one (21) days of LA Waterkeeper's receipt of the complete Hydrological Evaluation/Treatment Plan.  If LA Waterkeeper does not provide a written response within said twenty-one (21) day period, LA Waterkeeper will not be allowed to provide any further Recommendations pursuant to this provision, and the Hydrological Evaluation/Treatment Plan will be deemed accepted as submitted.

  iii. Within twenty-one (21) days of Defendants' receipt of Recommendations, if any, Defendants shall incorporate LA Waterkeeper's Recommendations into the Hydrological Evaluation/Treatment Plan or, alternatively, provide a separate written rationale explaining why any of the Recommendations were not accepted or incorporated, and provide a Final Hydrological Evaluation/Treatment Plan to LA Waterkeeper.

  iv. Any disputes as to the adequacy of the Hydrological Evaluation shall be resolved pursuant to the dispute resolution provisions of this Consent Decree, set out in Section IV below.

c. As soon as possible but no later than sixty (60) days after the completion of the Final Hydrological Evaluation/Treatment Plan, install, repair, and/or heighten permanent concrete berms, curbs, or similarly effective physical barriers, and/or re-grade the pavement or asphalt as necessary or install other measures, in order to convey all storm water to, and prevent storm water discharges from any location other than, the

advanced treatment system, including without limitation along the perimeter of the Facility and as necessary to ensure storm water does not discharge from the current DP2, DP3, and DP4 or any Facility driveways;

d. Any upgrades to the existing treatment system detailed in the Final Hydrological Evaluation/Treatment Plan, including all of its components, shall be installed and operational per the timelines within the Final Hydrological Evaluation/Treatment Plan as set forth above; unless more time is needed to obtain any relevant agency permit or approval. Defendants may request additional time, which LA Waterkeeper will consider in good faith and approval will not be unreasonably withheld. Within seven (7) days of the installation of the upgrades to the existing treatment system being completed and fully operational, Defendants shall confirm to LA Waterkeeper in writing certified by a QISP, with photographs, that installation of the upgrades has been completed and that the upgraded system is fully operational.

16. <u>Structural and Non-Structural BMPs for the 137 West 168th Street Facility</u>. As soon as possible but no later than ninety (90) days after the Effective Date, Defendant shall file a Notice of Intent to Comply with the General Permit ("NOI") with the Regional Board for the 137 West 168th Street Facility.

a. <u>Initial Structural and Non-Structural BMPs</u>. As soon as possible but no later than sixty (60) days after the Effective Date, Defendant shall develop and implement the following initial structural and non-structural BMPs at the 137 West 168th Street Facility:

i.     Patch, pave, or otherwise resurface areas of significantly degraded pavement or asphalt throughout the 137 West 168th Street Facility as necessary;

ii.    Implement a sweeping program using a regenerative air or vacuum sweeper certified by the South Coast Air Quality Management District under Rule 1186 or with greater than 98 percent efficiency on 0.3 to 1.0 micron particles on all paved areas within the Facility, and outside the Facility where pollutants are tracked out from within the Facility, at least once per month. Employ vacuum sweeping with a backpack-style HEPA vacuum in conjunction with the mechanical sweeper in areas within the Facility that a mechanical sweeper cannot access, at least once per month outside the wet season, once per week during the wet season, and within twenty-four (24) hours prior to a forecasted rain event;

iii.   Employ and secure new wattles/filter media/filtration socks (biochar or other equivalent media), prior to Forecasted Rain Events which have been bench-scale tested at similar sites to optimize selection, in order to remove sediments, metals, and organic materials in storm water discharged from the 137 West 168th Street Facility, and plan to configure such wattles/filter media/socks to achieve optimal contact time with storm water prior to discharge, *i.e.,* in multiple layers and/or overlapping formations. Defendant shall, thereafter, employ and secure new such wattles/filter media/filtration socks in the same manner annually, no later than September 15th;

15

iv.    During the Wet Season, and as necessary, replace the wattles/filter media/socks when degraded or ineffective, including without limitation when there are rips, tears or other visual damage, and/or sampling data demonstrating the wattles/filter media/socks are not sufficiently reducing pollutant concentrations;

v.    Institute a formal pre-rain protocol throughout the Wet Season to be implemented within twenty-four (24) hours prior to a Forecasted Rain Event, involving inspection of any wattles/filter media/socks deployed at the Facility, and removal of any exposed waste material to the maximum extent practicable;

vi.    Within twenty-four (24) hours prior to a Forecasted Rain Event, cover all debris and scrap bins, and trash cans with tarps, lids, or other coverings sufficient to prevent exposure to rainfall, including without limitation those stored outside and where roof protection is inadequate, or otherwise move them into a covered structure adequate to prevent exposure to rainfall;

vii.    Remove, and prevent the storage of, any inutile, and/or abandoned racks, vehicles, equipment, paint and waste materials from the entire 137 West 168th Street Facility; and

viii.    Institute an equipment and vehicle maintenance program that ensures:

1.    no maintenance activities occur outdoors during wet weather, unless such maintenance is required for safe operation of the 137 West 168th Street Facility, *e.g.*,

16

the forklift breaks down in a location that prevents
ingress/egress;

2.    maintenance activities occur only in designated work
areas or beneath covered maintenance areas; and

3.    when maintenance activities must be performed
outdoors, action shall be taken to immediately
contain, capture, and clean up any discharge or spills
of waste fluids to the ground.

ix.    Within seven (7) days of each of the BMPs in Paragraphs
16.a.i., 16.a.ii., and 16.a.iv. above being implemented,
Defendant shall confirm to LA Waterkeeper in writing, with
photographs, that such BMP has been implemented for the
first time as set forth above.

b.    Hydrological Evaluation/ Treatment Plan. As soon as possible but
no later than ninety (90) days after the Effective Date, Defendant
shall submit a Hydrological Evaluation/Treatment Plan to LA
Waterkeeper providing a full assessment of the 137 West 168th
Street Facility's topography, curbing elevation, drainage, storm
water flow (including surface/sheet flow), and retention capacity
to determine optimal implementation of the BMPs in this
Paragraph 16.

i.    If it is determined that advanced treatment may be
necessary, the Hydrological Evaluation/ Treatment Plan
shall also assess the retention capacity and establish the
volume- and flow-based criteria for the Design Storm to be
used for the 137 W. 168th Street Facility, as well as provide
for the design of the Facility's advanced treatment system
sufficient to contain and treat storm water and prevent the

17

discharge of untreated storm water from the 137 W. 168th Street Facility up to the Design Storm standard, including schedule for full implementation. Defendants shall endeavor to utilize a Design Storm of greater than the 85th percentile storm event if feasible.

ii. LA Waterkeeper shall provide Defendants with a written response ("Recommendations") if any, to the Hydrological Evaluation/Treatment Plan within twenty-one (21) days of LA Waterkeeper's receipt of the complete Hydrological Evaluation/Treatment Plan. If LA Waterkeeper does not provide a written response within said twenty-one (21) day period, LA Waterkeeper will not be allowed to provide any further Recommendations pursuant to this provision, and the Hydrological Evaluation/Treatment Plan will be deemed accepted as submitted.

iii. Within twenty-one (21) days of Defendants' receipt of Recommendations, if any, Defendants shall incorporate LA Waterkeeper's Recommendations into the Hydrological Evaluation/Treatment Plan or, alternatively, provide a separate written rationale explaining why any of the Recommendations were not accepted or incorporated, and provide a Final Hydrological Evaluation/Treatment Plan to LA Waterkeeper.

iv. Any disputes as to the adequacy of the Hydrological Evaluation shall be resolved pursuant to the dispute resolution provisions of this Consent Decree, set out in Section IV below.

[PROPOSED] CONSENT DECREE

v.   As soon as possible but no later than sixty (60) days after the completion of the Final Hydrological Evaluation/Treatment Plan, install, repair, and/or heighten permanent concrete berms, curbs, or similarly effective physical barriers, and/or re-grade the pavement or asphalt as necessary or install other measures, in order to convey all storm water to, and prevent storm water discharges from any location other than approved Discharge Points and/or an Advanced Treatment System, if applicable.

17.    <u>Non-Structural BMPs for the 134 West 168th Street Facility</u>.  As soon as possible but no later than ninety (90) days after the Effective Date, Defendant shall file a Notice of Intent to Comply with the General Permit ("NOI") with the Regional Board for the 134 West 168th Street Facility.[4]

a.   As soon as possible but no later than sixty (60) days of the Effective Date, and, with the exception of sweeping pursuant to Paragraph 17.a.i below which is for the duration of the Term, Defendants shall develop and implement the following BMPs at the 134 West 168th Street Facility:

i.   Implement a sweeping program using a regenerative air or vacuum sweeper certified by the South Coast Air Quality Management District under Rule 1186 or with greater than 98 percent efficiency on 0.3 to 1.0 micron particles on all paved areas within the Facility, and outside the Facility where pollutants are tracked out from within the Facility, at least once per month outside the wet season. Employ

---

[4] All three of the Unpermitted Facilities shall file a single Notice of Intent to Comply with the Regional Board, and shall operate under a single WDID Number.

19

vacuum sweeping with a backpack-style HEPA vacuum in conjunction with the mechanical sweeper in areas within the Facility that a mechanical sweeper cannot access, at least once per month outside the wet season, once per week during the wet season, and within twenty-four (24) hours prior to a forecasted rain event;

ii.    Within twenty-four (24) hours prior to a Forecasted Rain Event, to the extent feasible, cover all industrial materials, debris and scrap bins, and trash cans with tarps, lids, or other coverings sufficient to prevent exposure to rainfall, including without limitation those stored outside and where roof protection is inadequate, or otherwise move them into a covered structure adequate to prevent exposure to rainfall;

iii.    Remove, and prevent the storage of, any inutile, and/or abandoned racks, vehicles, equipment, paint and waste materials from the entire 134 West 168th Street Facility; and

iv.    Institute an equipment and vehicle maintenance program that ensures:

1.    no maintenance activities occur outdoors during wet weather, unless such maintenance is required for safe operation of the 134 West 168th Street Facility, *e.g.*, the forklift breaks down in a location that prevents ingress/egress;

2.    maintenance activities occur only in designated work areas or beneath covered maintenance areas; and

3.    when maintenance activities must be performed outdoors, action shall be taken to immediately

20

[PROPOSED] CONSENT DECREE

1  contain, capture, and clean up any discharge or spills

2  of waste fluids to the ground.

3  18.    No Exposure Certification.  Defendants shall incorporate BMP

4  requirements into the combined SWPPP that includes 134 W 168th Street addressing

5  all of the NEC Checklist requirements as required in the IGP to utilize the sampling

6  exception in XI.C.6.c.  Defendants shall provide LA Waterkeeper with the completed

7  NEC Checklist pursuant to General Permit § XVII.F.2 demonstrating that none of the

8  material or activities are, or will be in the foreseeable future, exposed to precipitation.

9  Additionally, pursuant to General Permit § II.B.2.b, to qualify for the NEC,

10  Defendant shall conduct an Annual Facility Comprehensive Compliance Evaluation

11  ("Annual Evaluation") as described in General Permit § XV, and certify the 134 W.

12  168th Street Facility meets NEC requirements.

13  19.    Structural and Non-Structural BMPs for the 16630 S Main Street

14  Facility.  As soon as possible but no later than ninety (90) days after the Effective

15  Date, Defendant shall file a Notice of Intent to Comply with the General Permit

16  ("NOI") with the Regional Board for the 16630 S Main Street Facility.

17  a.    As soon as possible but no later than sixty (60) days of the

18  Effective Date, Defendants shall develop and implement the

19  following BMPs at the 16630 S Main Street Facility:

20  i.    Patch, pave, or otherwise resurface areas of significantly

21  degraded pavement or asphalt, where such pavement or

22  asphalt already exists at the 16630 S Main Street Facility as

23  necessary to form a drainage to support filter sock

24  deployment;

25  ii.    Within twenty-four (24) hours prior to a Forecasted Rain

26  Event, to the extent feasible, cover all industrial waste,

27  debris and scrap bins, and trash cans with tarps, lids, or

28  other coverings sufficient to prevent exposure to rainfall,

[PROPOSED] CONSENT DECREE

including without limitation those stored outside and where roof protection is inadequate, or otherwise move them into a covered structure adequate to prevent exposure to rainfall;

iii.    Remove, and prevent the storage of, any inutile, and/or abandoned racks, vehicles, equipment, paint and waste materials from the entire 16630 S Main Street Facility; and

iv.    Institute an equipment and vehicle maintenance program that ensures:

  i.    no maintenance activities occur outdoors during wet weather;

  ii.    maintenance activities occur only in designated work areas or beneath covered maintenance areas; and

  iii.    when maintenance activities must be performed outdoors, action shall be taken to immediately contain, capture, and clean up any discharge or spills of waste fluids to the ground.

v.    Within seven (7) days of the BMPs in Paragraph 18.a.i above being implemented, Defendants shall confirm to LA Waterkeeper in writing, with photographs, that such BMP has been implemented as set forth above.

b.    Hydrological Evaluation. As soon as possible but no later than ninety (90) days of the Effective Date, Defendant shall submit a written plan to LA Waterkeeper ("Hydrological Evaluation") providing a full assessment of the 16630 S Main Street Facility's topography, curbing elevation, drainage, storm water flow (including surface/sheet flow), and retention capacity to determine optimal implementation of the BMPs in this Paragraph 18. Additionally, such Hydrological Evaluation shall include an

evaluation of converting the vegetated area into an infiltration basin or bioswale for enhanced storm water treatment.

i.  To the extent described in the Hydrological Evaluation, and within sixty (60) days of completion of same, install and/or repair permanent concrete berms, curbs, or similarly effective physical barriers, and/or re-grade the pavement or asphalt as necessary, in order to prevent storm water discharges to the fullest extent feasible from any point other than Discharge Points;

ii. To the extent described in the Hydrological Evaluation, and within sixty (60) days of completion of same, employ and secure new wattles/filter media/filtration socks (biochar or other equivalent media), which have been bench-scale tested to optimize selection, in order to remove sediments, metals, and organic materials in storm water discharged from the 16630 S Main Street Facility, and configure such wattles/filter media/socks to achieve optimal contact time with storm water prior to discharge, *i.e.,* in multiple layers and/or overlapping formations. Defendants shall, thereafter, employ during Forecasted Rain Events and secure new such wattles/filter media/filtration in the same manner annually no later than September 15th;

iii. To the extent described in the Hydrological Evaluation, within sixty (60) days of completion of the Evaluation, during the Wet Season, and as necessary, replace the wattles/filter media/socks when degraded or ineffective, including without limitation when there are rips, tears or other visual damage, and/or sampling data demonstrating

23

1      the wattles/filter media/socks are not sufficiently reducing

2      pollutant concentrations;

3         iv.    To the extent described in the Hydrological Evaluation, and

4      within sixty (60) days of completion of same, institute a

5      formal pre-rain protocol throughout the Wet Season to be

6      implemented within twenty-four (24) hours prior to a

7      Forecasted Rain Event, involving inspection of any

8      wattles/filter media/socks deployed at the Facility and

9      removal of any exposed waste;

10        v.    LA Waterkeeper shall provide Defendants with a written

11     response ("Recommendations") if any, to the Hydrological

12     Evaluation within twenty-one (21) days of LA

13     Waterkeeper's receipt of the complete Hydrological

14     Evaluation.  If LA Waterkeeper does not provide a written

15     response within said twenty-one (21) day period, LA

16     Waterkeeper will not be allowed to provide any further

17     Recommendations pursuant to this provision, and the

18     Hydrological Evaluation will be deemed accepted as

19     submitted.

20        vi.    Within twenty-one (21) days of Defendants' receipt of

21     Recommendations, if any, Defendants shall incorporate LA

22     Waterkeeper's Recommendations into the Hydrological

23     Evaluation or, alternatively, provide a separate written

24     rationale explaining why any of the Recommendations were

25     not accepted or incorporated, and provide a Final

26     Hydrological Evaluation to LA Waterkeeper.

27        vii.    Any disputes as to the adequacy of the Hydrological

28     Evaluation shall be resolved pursuant to the dispute

[PROPOSED] CONSENT DECREE

1  resolution provisions of this Consent Decree, set out in

2  Section IV below.

3  viii.    As soon as possible but no later than sixty (60) days after

4  the completion of the Final Hydrological Evaluation, install

5  effective physical barriers, and/or re-grade the pavement or

6  asphalt as necessary or install other measures, and in order

7  to convey all storm water to, and prevent storm water

8  discharges from any location other than approved Discharge

9  Point(s) and/or Infiltration Basin or Bioswale, if applicable.

10

11  **B.    SAMPLING AT THE FACILITIES**

12      20.    Defendants shall develop a monitoring program consistent with the

13  General Permit. During the Term, Defendants shall collect samples of storm water

14  discharge from each Discharge Point from at least four (4) Qualifying Storm Events

15  (two Qualifying Storm Events during the first half of the Reporting Year and two

16  Qualifying Storm Events during the second half of the Reporting Year).   Defendants

17  will use best efforts to capture the first two Qualifying Storm Events in each half of

18  the Reporting Year.  Such sampling shall take place as soon as possible within the

19  four (4) hour period required by the General Permit § XI.B.5.  If Defendants would

20  have been required to collect samples during a rain event pursuant to the General

21  Permit and this Consent Decree had such rain event produced a discharge, but

22  Defendants did not collect samples because such rain event did not produce a

23  discharge, then Defendants shall document the inability to sample by taking

24  representative photographs during the rain event of each Discharge Point from which

25  no discharge occurred. Defendants shall submit such representative photographs to

26  LA Waterkeeper by email, along with rain gauge/sensor data for the date of such rain

27  event, within ten (10) days of a written request for such records by LA Waterkeeper.

28

[PROPOSED] CONSENT DECREE

21.    <u>Sampling Parameters</u>. All samples collected pursuant to this Consent Decree shall be analyzed, at minimum, for the parameters listed in Table 1. Should Defendants conduct sampling for any additional parameters that are listed in <u>40 C.F.R. § 131.38</u> and/or in the General Permit as a result of changed operations, a revised pollutant source assessment, or a new mandate from a regulatory agency, such parameter shall be incorporated into this Consent Decree as if listed in Table 1 for all purposes, including any Action Plan requirements (as defined below). Defendants shall immediately notify LA Waterkeeper of its intent to conduct sampling for any such additional parameters and the Parties shall meet and confer regarding the applicable Table 1 limit for such purposes within ten (10) days of such notification.

22.    <u>Laboratory and Holding Time</u>. Except for pH samples, Defendants shall deliver all samples to a California-certified environmental laboratory for analysis within allowable hold times, pursuant to 40 C.F.R. Part 136. Analysis of pH will be completed onsite using a portable instrument that is calibrated and used according to the manufacturer's instructions.

23.    <u>Detection Limit</u>. Defendants shall request that the laboratory use analytical methods adequate to detect the individual pollutants at or below the values specified in the General Permit and Table 1 below.

24.    <u>Reporting</u>. Defendants shall provide complete laboratory results of all samples collected at the Facility to SMARTS in accordance with the General Permit and shall provide copies to LA Waterkeeper within ten (10) days of receiving the laboratory report with the results.

C.    **REDUCTION OF POLLUTANTS IN DISCHARGES**

25.    <u>Table 1 Numeric Limits</u>. Defendants shall develop and implement BMPs for storm water discharges from the Facilities that reduce pollutant concentrations to levels below those in Table 1.

**TABLE 1[5]**

| Parameter | Numeric Limit | Source of Limit |
|---|---|---|
| Aluminum | 0.75 mg/L | NAL |
| Iron | 1.0 mg/L | NAL |
| Zinc | 0.26 mg/L | NAL |
| N+N | 0.68 mg/L | NAL |
| TSS | 100 mg/L | NAL |
| O&G | 15 mg/L | NAL |
| pH | <6 or >9 S.U. | NAL |

26.    <u>Table 1 Exceedances</u>. An "Exceedance" of Table 1 is defined as follows: where the concentration of any pollutant in any two (2) storm water samples[6] from the applicable Facility exceeds any numeric limit contained in Table 1 during any Reporting Year during the Term.

27.    <u>Action Plan</u>. As of the Effective Date, and for the remainder of the Term, if (a) Defendants have an unauthorized non-storm water discharge in violation of Paragraph 12 above, (b) Defendants discharge untreated storm water in smaller than a Design Storm from a Facility with an operational treatment system, or (c) storm water samples demonstrate an Exceedance as defined above, Defendants shall prepare and submit to LA Waterkeeper a plan for reducing and/or eliminating the relevant discharge of pollutants for the applicable Facility, eliminating discharges of untreated storm water in smaller than a Design Storm as applicable, and/or achieving compliance with the non-storm water discharge prohibition ("Action Plan"). However, an Action Plan shall not be required when the BMPs for the applicable unauthorized non-storm water discharge, discharge of untreated storm water in

---

[5] The numeric limits listed in Table 1 are for reference only, and the Table 1 limit applicable to each parameter shall be the then-effective limit provided by the applicable source, e.g., if the NAL for iron is either increased to 1.1 mg/L or decreased to 0.90 mg/L, such new NAL, and not 1.0 mg/L, shall be used as the Table 1 limit for the purposes of this Consent Decree as if set forth herein. If the source of a limit in Table 1 is revised to no longer provide a limit for a given parameter, e.g., the NAL for iron being removed, then the Parties shall meet and confer regarding the applicable Table 1 limit for such parameter for the purposes of this Consent Decree.

[6] As examples of storm water sample exceedances: samples from Sample Point 1 exceeding the 1.0 mg/L standard for iron on December 28, 2024 and on March 15, 2025.

[PROPOSED] CONSENT DECREE

smaller than a Design Storm as applicable, or Exceedance for the same pollutant in the same drainage area were addressed in a previous Action Plan in the same Reporting Year and such BMPs were not yet implemented as of the date of the applicable unauthorized non-storm water discharge, discharge in smaller than a Design Storm as applicable, or QSE sampling that led to the Exceedance.[7] The complete Action Plan shall be submitted to LA Waterkeeper within sixty (60) days of (a) the unauthorized non-storm water discharge, (b) the discharge of untreated storm water in smaller than a Design Storm, or (c) the receipt of the laboratory report demonstrating the Exceedance, as applicable. If an Action Plan is required for more than one (1) Facility, Defendants may submit one (1) Action Plan that addresses all applicable Facilities.

a.    Action Plan Requirements. Each complete Action Plan submitted shall include at a minimum: (1) the identification of the pollutant(s) discharged in excess of the numeric limit(s), the applicable discharge in smaller than a Design Storm, and/or the applicable unauthorized non-storm water discharge; (2) an assessment of the source of each pollutant exceedance, applicable discharge in smaller than a Design Storm, and/or applicable unauthorized non-storm water discharge; (3) the identification of additional BMPs that shall be implemented to achieve compliance with the numeric limit(s), the Design Storm requirement, and/or unauthorized non-storm water discharge prohibition, as well as the design plans and calculations of these additional BMPs; and (4) time schedules for implementation of the proposed BMPs. The

---

[7] For clarity, an Action Plan based on an Exceedance shall be required if: (i) the applicable Exceedance is demonstrated for a pollutant and/or in a drainage area not addressed in a previous Action Plan in the same Reporting Year; and/or (2) when the applicable Exceedance is demonstrated for the same pollutant in the same drainage area as in a previous Action Plan in the same Reporting Year and the BMPs in the previous Action Plan were fully implemented before the applicable QSE that led to the Exceedance was sampled.

time schedule(s) for implementation shall ensure that all BMPs are implemented as soon as possible, but in no event later than ninety (90) days following the submission of the Action Plan, unless a later implementation date is mutually agreed upon by the Settling Parties. Within seven (7) days of each of the BMPs set forth in the Action Plan being implemented, Defendants shall confirm to LA Waterkeeper in writing, with representative photographs, that such BMP has been implemented as set forth in the Action Plan.

b.  <u>Action Plan Proposed BMPs.</u> The following BMPs should generally be evaluated for inclusion in Action Plans to attain the Table 1 levels in the applicable Facility's storm water discharges:

   i.  <u>Hydrologic Controls</u>. Installation of additional berms or equivalent structural controls necessary to reduce or prevent storm water from flowing off site other than through the engineered storm water conveyance system or storm water retention or treatment facilities.

   ii.  <u>Sweeping</u>. The increased/more frequent use of sweepers and manual sweeping in otherwise inaccessible areas.

   iii.  <u>Treatment Systems</u>. Installing additional components or systems, or otherwise improving, an storm water treatment system, or making changes to the operation and maintenance protocols for such system, to provide more effective filtration treatment of storm water prior to discharge.

   iv.  <u>Evaluation of Existing BMPs</u>.  Replacing, rehabilitating, or eliminating existing BMPs, taking into account the age of the BMPs involved or employed, the engineering aspect

29

of the application of various BMPs, and any adverse environmental impact of the BMPs.

c.    Action Plan Review. LA Waterkeeper shall have twenty-one (21) days upon receipt of Defendants' complete Action Plan to provide Defendants with comments. If LA Waterkeeper does not provide a written response within said twenty-one (21) day period, LA Waterkeeper will not be allowed to provide any further comments pursuant to this provision and the Action Plan will be deemed accepted as submitted. Within twenty-one (21) days of receiving LA Waterkeeper's proposed revisions to an Action Plan, if any, Defendants shall consider each of LA Waterkeeper's recommended revisions and accept them or justify in writing why any comment is not incorporated. Action Plan(s) developed and implemented pursuant to this Consent Decree are an obligation of this Consent Decree. Any disputes as to the adequacy of an Action Plan shall be resolved pursuant to the dispute resolution provisions of this Consent Decree, set out in Section IV below. Disputes regarding the adequacy of a particular BMP shall not impact the schedule for implementing any other BMP set forth in the Action Plan.

d.    Defendants shall revise the then-current SWPPP for the applicable Facility to reflect the changes required by the Action Plan, as set forth in Paragraph 31.b.i. below.

e.    Action Plan Payments. Defendants shall pay Three Thousand Dollars ($3,000.00) each time an Action Plan is submitted to LA Waterkeeper that addresses one (1) Facility and Five Thousand Dollars ($5,000.00) each time an Action Plan is submitted to LA Waterkeeper that addresses two (2) or more Facilities. Plaintiff

30

agrees to cap the number of Action Plan Payments per year at three payments.  Action Plan Payments are due at the same time that the applicable Action Plan is submitted and shall be made to "Los Angeles Waterkeeper" via certified mail, return receipt requested to Los Angeles Waterkeeper, c/o Senior Attorney, 360 E 2nd Street Suite 250, Los Angeles, CA 90012. Failure to submit a payment as required under this Paragraph will constitute a breach of the Consent Decree.

**D.    VISUAL OBSERVATIONS**

28.    <u>Storm Water Discharge Observations</u>. During the Term, appropriately trained staff of Defendants shall conduct visual observations during the Facilities' operating hours during every rain event. Such inspections shall comply with all requirements of Section XI.A.2 of the General Permit.

29.    <u>Monthly Visual Observations</u>. During the Term, appropriately trained staff of Defendants shall conduct monthly non-storm water visual observations of the Facilities. Such inspections shall comply with all requirements of Section XI.A.1 of the General Permit. Such observations shall include outfalls, Discharge Points, outdoor industrial equipment and storage areas, outdoor industrial activities areas, BMPs, and all other potential sources of industrial pollutants. All Discharge Points shall also be inspected for accumulation of dust, sediment, sand, grit, oily substances, oily sheens upon any standing water, and other materials associated with operations at the Facilities. During the Wet Season, such inspections shall further include observations of all storm water BMPs that are used only during Forecasted Rain Events at the Facilities to ensure that operational BMPs are being implemented, and structural BMPs are in good condition or working order. Such inspections shall further include observation as to whether there are any non-storm water discharges from the Facilities.

[PROPOSED] CONSENT DECREE

30.    <u>Visual Observations Records</u>. Defendants shall maintain observation records, including representative photographs, to document compliance with Paragraphs 27 and 28. Such records shall include, but not be limited to, the persons who completed the inspection, the date of the inspection, and notes sufficient to describe the completed activity and all observations thereof, including but not limited to: (i) whether BMPs are in a proper, working condition; (ii) whether any repair, replacement, or operation and maintenance is needed for any BMPs; and (iii) other conditions that have the potential to lead to pollutant loading in storm water discharges; and (iv) representative photographs of all the foregoing. Defendants shall provide LA Waterkeeper with a copy of those records within seven (7) days of receipt of a written request from LA Waterkeeper for those records.

**E.    TRAINING, PLANS, AND PERMIT ENROLLMENT**

31.    <u>Employee Training Program</u>. Within ninety (90) days of the Effective Date, Defendants shall develop and implement an employee training program that meets the following requirements and ensures (1) that there is a sufficient number of employees at each Facility designated to achieve compliance with the General Permit and this Consent Decree ("Designated Employees"), and (2) that these Designated Employees are properly trained to perform the activities required by the General Permit and this Consent Decree ("Training Program"):

        a.    <u>Materials</u>. Training materials shall be the procedures provided in the Facilities' SWPPPs;

        b.    <u>Language</u>. The training and training materials shall be available and offered in the language(s) in which relevant employees are fluent if the employees do not understand English. If necessary, Defendants shall provide a translator or translators at all trainings where such translation is likely to improve staff comprehension of the Training Program and improve compliance with this Consent Decree and the General Permit;

c.  <u>Training Frequency</u>. Training shall be provided by a person familiar with the requirements of this Consent Decree and the General Permit, and shall be repeated as necessary to ensure that all relevant employees are familiar with the requirements of this Consent Decree, the Permit, and the Facilities' SWPPPs. All relevant new staff shall receive this training before assuming responsibilities for implementing the SWPPPs;

d.  <u>Sampling Training</u>. Defendants shall designate an adequate number of employees necessary to collect storm water samples as required by this Consent Decree, including training to ensure samples are properly collected, stored, and submitted to a certified laboratory;

e.  <u>Visual Observation Training</u>. Defendants shall provide training on how and when to properly conduct visual observations to Designated Employees;

f.  <u>Non-Storm Water Discharge Training</u>. Defendants shall train all Designated Employees at the Facilities on the General Permit's prohibition of non-storm water discharges, so that Designated Employees know what non-storm water discharges are and how to detect and prevent non-storm water discharges;

g.  <u>Employees</u>. All Designated Employees at the Facilities shall participate in the Training Program annually. New Designated Employees shall participate in the Training Program within ninety (90) days of their hiring date; and

h.  <u>Records</u>. Defendants shall maintain training records to document compliance with this Paragraph and shall provide LA Waterkeeper with a copy of these records within seven (7) days of receipt of a written request.

[PROPOSED] CONSENT DECREE

32.     <u>SWPPP Revisions</u>.

    a.     <u>Initial SWPPP Revisions</u>. Defendants shall draft and/or amend each of the Facilities' SWPPPs to incorporate the requirements in this Consent Decree and comply with the General Permit and submit all of the complete, updated SWPPPs to LA Waterkeeper within ninety (90) days of the Effective Date for LA Waterkeeper's review and comment. The complete, updated SWPPPs shall contain, at a minimum, the following elements:

        i.     A revised pollutant source assessment, including all elements required by section X.G of the General Permit as well as assessments of the potential for the Facilities' storm water discharges to contain pollutants for which the Receiving Waters are 303(d) listed and/or have Total Maximum Daily Loads;

        ii.     A detailed narrative description and assessment of each industrial activity with the potential to impact storm water quality occurring at the Facilities as required by section X.G of the General Permit;

        iii.     Descriptions of all BMPs in accordance with section X.H.4 of the General Permit, including without limitation BMPs required by this Consent Decree;

        iv.     A set of site maps that comply with section X.E of the General Permit and provisions of this Consent Decree including accurately depicting the different drainage areas and flows;

        v.     A designation of which drainage areas at the Facility are industrial and which are non-industrial and, as to any industrial areas for which it applies, an NEC checklist and

34

certification statement demonstrating that drainage areas at the Facility such as the uncovered area at 134 W. 168th Street have been evaluated and meet the no exposure certification coverage requirements;

vi.    A MIP as required by sections XI and X.I of the General Permit; and

vii.    A designation (by position/title) of employees responsible for carrying out storm water management, monitoring, sampling and SWPPP implementation, e.g., visual inspection of each specific area, monitoring each specific BMP, sampling, etc.

b.    Additional SWPPP Revisions.

i.    Within sixty (60) days after approval of any Action Plan by LA Waterkeeper (or resolution pursuant to Dispute Resolution), Defendants shall revise the then-current SWPPP for the applicable Facility to reflect the changes required by the Action Plan and submit the complete, updated SWPPP to LA Waterkeeper for LA Waterkeeper's review and comment.

ii.    Within thirty (30) days after any changes in industrial activities, sources of industrial pollutants, changes to Discharge Points, or changes to sections of a SWPPP identified in that SWPPP as requiring a SWPPP revision (including but not limited to, changes or additions of BMPs, or changes in or additions of industrial activities that impact storm water discharge), Defendants shall revise the then-current SWPPP for the applicable Facility to reflect such changes and submit the complete, updated

35

1  SWPPP to LA Waterkeeper for LA Waterkeeper's review
2  and comment.

3  c.  Review of SWPPP.  For any SWPPP updates pursuant to
4  Paragraphs 31.a and 31.b, LA Waterkeeper shall have thirty (30)
5  days upon receipt of Defendants' complete SWPPP for the
6  applicable Facility to provide Defendants with comments.  If LA
7  Waterkeeper does not provide a written response within said thirty
8  (30) day period, LA Waterkeeper will not be allowed to provide
9  any further comments pursuant to this Paragraph and the SWPPP
10  will be deemed accepted as submitted. Within thirty (30) days of
11  receiving LA Waterkeeper's comments and proposed changes to
12  the SWPPP, Defendants shall consider each of the comments and
13  proposed changes and either accept them or justify in writing why
14  a change is not incorporated. The Parties agree to work in good
15  faith to resolve any disputes with respect to the SWPPP, and any
16  remaining disputes will be resolved through timely initiation of
17  the dispute resolution procedures in Section IV below. Following
18  its incorporation of proposed modification or additions (if any)
19  into each revised SWPPP, Defendants shall upload the applicable
20  SWPPP to SMARTS.

21  33.  Enrolling in the General Permit. Within ten (10) days of the initial
22  SWPPP revisions for the Facilities being final pursuant to Paragraphs 31.b and 31.d
23  above, Defendants shall enroll the Unpermitted Facilities in the General Permit as
24  provided for in the applicable SWPPP(s). Defendants shall notify LA Waterkeeper of
25  the enrollment and applicable WDIDs for the Facilities within ten (10) days of
26  receiving such WDIDs.

27

28

[PROPOSED] CONSENT DECREE

### F.    COMPLIANCE MONITORING AND REPORTING

34.    LA Waterkeeper may conduct one annual site inspection ("Site Inspection") at each Facility during each Reporting Year during the Term for the purpose of ensuring compliance with this Consent Decree and the General Permit. In the event of a dispute regarding Defendants' compliance with this Consent Decree, and provided a Site Inspection would be relevant to resolving the Parties' dispute, the Parties agree to meet and confer regarding an additional Site Inspection for the applicable Facility at Plaintiff's request. Plaintiff shall not unreasonably request, and Defendants shall not unreasonably deny, one additional Site Inspection. Any Site Inspection shall occur during normal business hours, and LA Waterkeeper will provide Defendants with at least seventy-two (72) hours' notice prior to a Dry Site Inspection, and at least forty-eight (48) hours' notice prior to a Wet Inspection. For any Site Inspection requested to occur in wet weather, Plaintiff shall be entitled to adjust timing or reschedule during normal business hours in the event the forecast changes and anticipated precipitation appears unlikely, and thus frustrates the purpose of visiting the applicable Facility in wet weather. Notice will be provided by electronic mail to the individual(s) designated below at Paragraph 61. During the Wet Weather inspection, Plaintiff may request that Defendants collect a sample of industrial storm water discharge from the Facility's designated industrial discharge point(s) referenced in its SWPPP, to the extent that such discharges are occurring. LA Waterkeeper shall be permitted to take photographs or video recording during any Site Inspection.

35.    <u>Document Provision</u>. During the Term, Defendants shall notify and submit documents to LA Waterkeeper as follows:

        a.    Defendants shall copy LA Waterkeeper, by electronic mail to the individual(s) designated below at Paragraph 61, on all compliance documents, monitoring and/or sampling data, written communications and/or correspondences, or any documents

related to storm water quality at the Facilities that are submitted to
the Regional Board, the State Board, and/or any state or local
agency, county or municipality. Notwithstanding the foregoing,
for any items that are prepared directly in or submitted to
SMARTS, a notification to LA Waterkeeper that the items was
prepared or is available in SMARTS is sufficient if provided
within three (3) business days.

b.    Within seven (7) days of receipt by Defendants, send to LA
Waterkeeper, by electronic mail to the individual(s) designated
below at Paragraph 61, any compliance document, inspection
report, written communication and/or correspondence, or any
document related to storm water quality at the Facilities received
by Defendants from the Regional Board, the State Board, and/or
any state or local agency, county, municipality.

36.    Compliance Monitoring. Defendants shall partially defray costs
associated with Plaintiff's monitoring of Defendants' compliance with this Consent
Decree during the Term by paying Twenty Thousand  Dollars ($20,000.00), within
thirty (30) days of the Entry Date, and Three Thousand Dollars ($3,000.00) per year
that the Term continues beyond June 30 following five (5) years from the Effective
Date, if any, with the first such payment being paid on June 30 following five (5)
years from the Effective Date, and each subsequent payment on June 30 annually
thereafter for the remainder of the Term. Each payment shall be made via check,
made payable to: "Los Angeles Waterkeeper" via certified mail, return receipt
requested to Los Angeles Waterkeeper, c/o Senior Attorney, 360 E 2nd Street Suite
250, Los Angeles, CA 90012. Failure to submit payment as required under this
Paragraph will constitute breach of the Consent Decree.

### G.    ENVIRONMENTALLY BENEFICIAL PROJECTS, LITIGATION FEES AND COSTS, MISSED DEADLINES, AND INTEREST

37.    <u>Environmentally Beneficial Project</u>. To fund environmentally beneficial project activities that will reduce or mitigate the impacts of storm water pollution from industrial activities occurring in waters tributary to the Los Angeles/Long Beach Harbor, Defendants shall make a payment totaling Eighty Thousand Dollars ($80,000.00) to the Rose Foundation for Communities and the Environment  within thirty (30) days of the Entry Date, payable to the Rose Foundation for Communities and the Environment and sent via certified mail to Attn: Jodene Isaacs, Rose Foundation for Communities and the Environment, 201 4th Street, Suite 102, Oakland, CA 94607-4369. Failure to submit payment as required under this Paragraph will constitute breach of the Consent Decree.

38.    <u>LA Waterkeeper's Fees and Costs</u>. Defendants shall pay a total of $77,750.00  to LA Waterkeeper to partially reimburse Plaintiff for their investigation fees and costs, expert/consultant fees and costs, reasonable attorneys' fees, and other costs incurred as a result of investigating and filing the lawsuit, and negotiating a resolution of this matter within thirty (30) days of the Entry Date. The payment shall be made payable to: the "Law Offices of Andrew L. Packard Attorney-Client Trust Account" and sent via certified mail to: <u>Attn.</u>: Law Offices of Andrew L. Packard, 245 Kentucky Street, Suite B3, Petaluma, CA 94952. Failure to submit payment as required under this Paragraph will constitute breach of the Consent Decree.

39.    <u>Missed Deadlines</u>. In the event that Defendants fail to submit to LA Waterkeeper any payment, document, report, or communication required by this Consent Decree, Plaintiff shall provide written notice to Defendants of such missed deadline. Defendants shall have seven (7) days from receipt of such notice to respond to Plaintiff, and, if necessary, cure such delinquency. If Defendants fail to respond, and if necessary, cure such alleged delinquency within seven (7) days of receipt of Plaintiff's notice, then Defendants shall pay a stipulated payment of Five Hundred

Dollars ($500). Such stipulated payment shall be made by check payable to: Rose Foundation for Communities and the Environment, and such funds shall be used for the sole purpose of funding environmentally beneficial projects, as described in Paragraph 36. Payment shall be sent via certified mail to the Rose Foundation for Communities and the Environment and sent via certified mail to Attn: Jodene Isaacs, Rose Foundation for Communities and the Environment, 201 4th Street, Suite 102, Oakland, CA 94607-4369. Defendants agree to make the stipulated payment within fourteen (14) days after the resolution of the event that precipitated the stipulated payment liability.

40.    Interest On Late Payments. Defendants shall pay interest on any payments, fees, or costs owed pursuant to this Consent Decree that are not received by the due date. The interest shall accrue starting the next business day after the payment is due and shall be computed at a rate of: 0.05% per month (6% per year). Interest shall continue to accrue daily on any outstanding balance until Defendants are current on all payments then due under this Consent Decree, and shall be paid at the same time that the payments, fees, or costs owed are paid to LA Waterkeeper. Interest on late payments shall be paid by check payable to the Rose Foundation for Communities and the Environment, and such funds shall be used for the sole purpose of funding environmentally beneficial projects, as described in Paragraph 36. Payment shall be sent via certified mail to the Rose Foundation for Communities and the Environment, Attn: Jodene Isaacs, Rose Foundation for Communities and the Environment, 201 4th Street, Suite 102, Oakland, CA 94607-4369.

## IV.    DISPUTE RESOLUTION

41.    This Court shall retain jurisdiction over this matter for the Term for the purposes of enforcing its terms and conditions, and adjudicating all disputes among the Parties that may arise under the provisions of this Consent Decree. The Court shall have the power to enforce this Consent Decree with all available legal and equitable remedies, including contempt.

42.   <u>Meet and Confer</u>. Either Party to this Consent Decree may invoke the dispute resolution procedures of this Section IV by notifying the other Party in writing of the matter(s) in dispute and of the disputing Party's proposal for resolution. The Parties shall then meet and confer in good faith (either telephonically or in person) within ten (10) days of the date of the notice in an attempt to fully resolve the dispute no later than thirty (30) days from the date of the meet and confer.

43.   <u>Settlement Conference</u>. If the Parties cannot resolve the dispute within thirty (30) days from the date of the meet and confer described in Paragraph 41 the Parties agree that the dispute may be submitted for formal resolution by filing a motion before the United States District Court for the Central District of California. The Parties agree to request an expedited hearing schedule on the motion.

44.   In resolving any dispute arising from this Consent Decree before the Court, the prevailing Party shall be entitled to seek fees and costs incurred pursuant to the provisions set forth in Section 505(d) of the Clean Water Act, <u>33 U.S.C. § 1365(d)</u>, and applicable case law interpreting such provisions, or as otherwise provided for by statute and/or case law.

**V.   MUTUAL RELEASE OF LIABILITY AND COVENANT NOT TO SUE**

45.   <u>Plaintiff's Waiver and Release of Defendants</u>. In consideration of the above, upon the Effective Date of this Consent Decree, Plaintiff, on its own behalf and on behalf of its officers and directors, release Defendants, their officers, directors, managers, employees, members, parents, subsidiaries, divisions, affiliates, successors or assigns, agents, attorneys and other representatives, from and waives all claims that were raised in the 60-Day Notice Letter and/or the Complaint up to and including the Termination Date of this Consent Decree.

46.   <u>Defendants' Waiver and Release of Plaintiff</u>. In consideration of the above, upon the Effective Date of this Consent Decree, Defendants, on their own behalf and on behalf of their officers, directors, employees, parents, subsidiaries, affiliates and each of their successors or assigns, release Plaintiff, its officers and

directors, from and waives all claims related to the 60-Day Notice Letter and/or the Complaint up to and including the Termination Date of this Consent Decree.

47.    <u>Plaintiff's Non-Waiver</u>.  Nothing in this Consent Decree limits or otherwise affects Plaintiff's rights to address or take any position that it deems necessary or appropriate in an informal or formal proceeding before the State Board, Regional Board, EPA, or any other judicial or administrative body on any matter relating to Defendants' compliance at the Facilities with the General Permit or the Clean Water Act occurring or arising after the Effective Date.

**VI.    MISCELLANEOUS PROVISIONS**

48.    <u>No Admission of Liability</u>. The Parties enter into this Consent Decree for the purpose of avoiding prolonged and costly litigation. Neither the Consent Decree nor any payment pursuant to the Consent Decree shall constitute or be construed as a finding, adjudication, or acknowledgement of any fact, law or liability, nor shall it be construed as an admission of violation of any law, rule, or regulation. Defendants maintain and reserve all defenses it may have to any alleged violations that may be raised in the future.

49.    <u>Counterparts</u>. This Consent Decree may be executed in any number of counterparts, all of which together shall constitute one original document. Telecopy and/or facsimile copies of original signature shall be deemed to be originally executed counterparts of this Consent Decree.

50.    <u>Authority</u>. The undersigned representatives for Plaintiff and Defendants each certify that s/he is fully authorized by the party whom s/he represents to enter into this Consent Decree. A Party's signature to this Consent Decree transmitted by facsimile or electronic mail shall be deemed binding.

51.    <u>Construction</u>. The language in all parts of this Consent Decree shall be construed according to its plain and ordinary meaning, except as to those terms defined in the Permit, the Clean Water Act, or specifically herein. The captions and

1    paragraph headings used in this Consent Decree are for reference only and shall not

2    affect the construction of this Consent Decree.

3        52.    <u>Full Settlement</u>. This Consent Decree constitutes a full and final

4    settlement of this matter.

5        53.    <u>Integration Clause</u>. This is an integrated Consent Decree. This Consent

6    Decree is intended to be a full and complete statement of the terms of the agreement

7    between the Parties and expressly supersedes any and all prior oral or written

8    agreements, covenants, representations, and warranties (express or implied)

9    concerning the subject matter of this Consent Decree.

10        54.    <u>Severability</u>. In the event that any provision, paragraph, section, or

11    sentence of this Consent Decree is held by a court to be unenforceable, the validity of

12    the enforceable provisions shall not be adversely affected.

13        55.    <u>Choice of Law</u>. The laws of the United States shall govern this Consent

14    Decree.

15        56.    <u>Diligence</u>. Defendants shall diligently file and pursue all required permit

16    applications for any required BMPs and shall diligently procure contractors, labor,

17    and materials needed to complete all BMPs by the required deadlines.

18        57.    <u>Effect of Consent Decree</u>. Compliance with this Consent Decree does

19    not mean that Defendants are complying with the General Permit, the Clean Water

20    Act, or any other law, rule, or regulation.

21        58.    <u>Negotiated Settlement</u>. The Settling Parties have negotiated this Consent

22    Decree and agree that it shall not be construed against the party preparing it, but shall

23    be construed as if the Settling Parties jointly prepared this Consent Decree, and any

24    uncertainty and ambiguity shall not be interpreted against any one party.

25        59.    <u>Modification of the Consent Decree</u>. This Consent Decree, and any

26    provisions herein, may not be changed, waived, discharged, or terminated unless by a

27    written instrument, signed by the Parties and approved by the Court. Any request to

28    modify any provision of the Consent Decree, including but not limited to any

[PROPOSED] CONSENT DECREE

deadline(s) set forth herein, must be made in writing at least fourteen (14) days before the existing deadline(s) applicable to the provision(s) proposed to be modified.

60.  Assignment. Subject only to the express restrictions contained in this Consent Decree, all of the rights, duties and obligations contained in this Consent Decree shall inure to the benefit of and be binding upon the Parties, and their successors and assigns. Defendants shall notify Plaintiff within ten (10) days of any assignment.

61.  Force Majeure. Neither of the Parties shall be considered to be in default in the performance of any of their respective obligations under this Consent Decree when performance becomes impossible due to a Force Majeure event. A Force Majeure event is any circumstance beyond a Settling Party's control, including without limitation, any act of God, war, fire, earthquake, flood, windstorm, pandemic, public health crisis, or natural catastrophe; criminal acts; civil disturbance, vandalism, sabotage, or terrorism; restraint by court order or public authority or agency; or action or non-action by, or inability to obtain the necessary authorizations or approvals from any governmental agency. A Force Majeure event shall not include normal inclement weather, economic hardship, inability to pay, or employee negligence. Any Party seeking to rely upon this Paragraph to excuse or postpone performance shall have the burden of establishing that it could not reasonably have been expected to avoid the Force Majeure event and which by exercise of due diligence has been unable to overcome the failure of performance. The Parties shall exercise due diligence to resolve and remove any Force Majeure event.

62.  Correspondence. All notices required herein or any other correspondence pertaining to this Consent Decree shall be, the extent feasible, sent via electronic mail transmission to the e-mail address listed below, or if electronic mail is not feasible, then by certified U.S. mail with return receipt, or by hand delivery to the following addresses:

| | |
|---|---|
| <u>If to Plaintiff</u>:<br>Los Angeles Waterkeeper<br>Erina Kwon<br>Benjamin Harris<br>Madeleine Siegel<br>360 E 2nd St., Suite 250<br>Los Angeles, CA 90012<br>Email: erina@lawaterkeeper.org<br>Email: ben@lawaterkeeper.org<br>Email: madeleine@lawaterkeeper.org<br>Phone: (310) 394-6162 | <u>If to Defendants</u>:<br>Paul Schifino<br>President<br><br>Anvil Steel Corporation<br>134 West 168th Street<br>Gardena, CA 90248<br><br>Junior Steel Co.<br>134 West 168th Street<br>Gardena, CA 90248<br><br>Email: PaulS@anvilsteel.com<br><br>Phone (310) 329-5811 |
| <u>With copies to</u>:<br>Andrew L. Packard<br>Law Offices of Andrew L. Packard<br>245 Kentucky street, Suite B3<br>Petaluma, CA 94952<br>andrew@packardlawoffices.com<br>Phone: (707) 782-4060, Ext. 1 | <u>With copies to</u>:<br>Tracy J. Egoscue<br>Egoscue Law Group, Inc.<br>3834 Pine Ave<br>Long Beach CA 90807<br>Email: <u>tracy@egoscuelaw.com</u><br>Phone: (562) 988-5978 |

Notifications of communications shall be deemed submitted three (3) days after the date that they are postmarked and sent by first-class mail, or immediately after acknowledgement of receipt via email by the receiving Party. Any change of address or addresses shall be communicated in the manner described above for giving notices.

63.     If for any reason the Federal Agencies should object to entry of this Consent Decree or to any portion of this Consent Decree or the Court should decline to approve this Consent Decree in the form presented, the Parties shall use their best efforts to work together to modify the Consent Decree within thirty (30) days so that it is acceptable to the Federal Agencies or the Court. If the Parties are unable to modify this Consent Decree in a mutually acceptable manner that is also acceptable to the Court, this Consent Decree shall immediately be null and void as well as inadmissible as a settlement communication under Federal Rule of Evidence 408 and <u>California Evidence Code section 1152</u>.

The Parties hereto enter into this Consent Decree and submit it to the Court for its approval and entry as a final judgment.

IN WITNESS WHEREOF, the undersigned have executed this Consent Decree as of the date first set forth below.

APPROVED AS TO CONTENT:

Dated: March 20          , 2025          By: _____
                                              Bruce Reznik
                                              Executive Director
                                              Los Angeles Waterkeeper

Dated: 3/20          , 2025          By: _____
                                              Paul Gerard Schifino
                                              President
                                              Anvil Steel Corporation, Junior
                                              Steel Co.,

APPROVED AS TO FORM

                                     Law Offices of Andrew L. Packard

Dated: March 20          , 2025          By: _____
                                              Andrew L. Packard
                                              Attorney for Plaintiff
                                              Los Angeles Waterkeeper

                                     Egoscue Law Group, Inc.

Dated: March 20          , 2025          By: _____
                                              Tracy J. Egoscue
                                              Attorney for Defendants
                                              Anvil Steel Corporation, Junior
                                              Steel Co.

**IT IS SO ORDERED.**
**FINAL JUDGMENT**

[PROPOSED] CONSENT DECREE

1

2        Upon approval and entry of this Consent Decree by the Court, this Consent

3   Decree shall constitute a final judgment between the Plaintiff and Defendants.

4

5

6   Dated: __5/15/2025_____        CENTRAL DISTRICT OF CALIFORNIA

7

8

9   _____
    HONORABLE JUDGE MARGO A.
10   ROCCONI
    United States  Magistrate Judge
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28